Opinion filed July 26,
2012

 

                                                                       In The

                                                                              

Eleventh Court of
Appeals

                                                                   __________

 

                                                         No. 11-10-00341-CV       

                                                    __________

 

                            IN
THE MATTER OF THE ESTATE OF 

                           ESTHER
ABELL DENTON, DECEASED



 

                                  On
Appeal from the County Court at Law

                                                          Midland
County, Texas

                                                    Trial
Court Cause No. P14,779

 



 

M E M O R A N D
U M   O P I N I O N

 

            Douglas
A. Denton appeals the decision of the trial court to end the administration of
his mother’s estate.  In four issues,[1]
he argues that the trial court abused its discretion when it approved the
administrator’s amended and restated inventory, when it approved the
administrator’s supplemental application for distribution and for closing of
estate, and when it refused to hear testimony from Appellee and Appellee’s
counsel.  We affirm.

Background
Facts

            Esther
Abell Denton died on January 17, 2006.  Appellant is her son and the primary
beneficiary of her estate.  He is the only beneficiary who has yet to accept
the bequests of the estate.  The decedent’s Last Will and Testament made a
specific bequest of her real property, including mineral interests, in equal
shares to Appellant and Jo Denton Tuck.  Tuck is the decedent’s stepdaughter.  The
residuary estate was bequeathed to the Esther Denton Trust for Douglas A.
Denton, of which Appellant and Tuck were to be named as cotrustees.  Tuck declined
to serve as cotrustee.

            The
will was admitted to probate on February 24, 2006.  The will named four
coexecutors: Appellant, Tuck, Bill Wiggins, and Karen Wiggins Dowler.  The application
to probate the will was initially filed on behalf of all four coexecutors, but
several weeks later, an amended application was filed by Tuck, Wiggins, and
Dowler in which they requested that Wiggins alone be appointed administrator
with will annexed.  The application cited conflict between Appellant and the
other executors, their frequent inability to locate Appellant, and the urgent need
for immediate administration of the estate as reasons for the request to
appoint a single administrator.  The trial court found that it was in the best
interest of the estate to have an administration supervised by the court.  Wiggins,
the appellee in this case, was appointed administrator with will annexed.

            The
original inventory of assets was filed on April 2, 2007, and was approved by
the trial court.  In August of that year, Appellee filed an application to
distribute the oil and gas properties in equal shares to Appellant and Tuck.  In
September, Appellee amended the application to request distribution of Tuck’s
share only; Appellant did not wish to receive his share of the properties at
that time.

            On
November 2, 2009, almost four years after administration of the estate had begun,
Appellee filed his application to distribute and to close the estate.  He
stated in the application that all debts had been paid, the federal estate tax
return had been filed, and the Internal Revenue Service closing letter had been
issued.  The application also informed the trial court that not only had
Appellant refused distribution of his share of the oil and gas interests, but
he had refused to cash checks from the administrator in the amount of $578,629.54.

            On
December 3, 2009, Appellant filed an objection to the original inventory that
the trial court had approved nearly three years earlier on the grounds that the
original inventory omitted certain mineral interests and contained errors.  He
requested that Appellee prepare and file an amended inventory.  Based on the
same grounds, Appellant also filed objections to Appellee’s annual account for
the period of February 1, 2009, to January 31, 2010.

            On
August 10, 2010, Appellee filed an amended inventory and an amended 2009
account.  Appellee made the corrections cited by Appellant, adding to both
documents several mineral interests, an overriding royalty interest, and some
New Mexico oil and gas properties.  Appellant filed a list of fourteen objections
to the amended inventory.  Appellant also objected to Appellee’s application to
distribute overriding royalty units to Appellant and Tuck on the ground that
Appellee did not have personal knowledge that the decedent had owned the
interest.  In addition to pointing out alleged flaws or omissions in the
inventory, Appellant objected that the inventory was “not based on the personal
knowledge of the Administrator” and that “the Administrator has no knowledge of
oil and gas matters and is incompetent to make a reliable statement as to what
interests are in the Estate.”

            Appellee
filed a supplemental application to distribute and to close the estate in which
he  included the amounts of additional checks that Appellant had refused to
cash.  The application, dated September 17, 2010, noted that the current amount
of uncashed checks was $698,512.33, but was continuing to increase.  A hearing
on Appellee’s application for distribution and closing was set for October 20,
2010.  Two days before the hearing, Appellant filed objections to the
application, alleging that the inventories contained numerous errors and that
the trial court had no jurisdiction as to the residuary trust provided by the
will.  Appellant also objected to being named trustee of the trust.

            During
the hearing, the trial court questioned Appellee’s counsel about the efforts
that were made to locate estate assets.  Appellee’s counsel assured the court
that Appellee had exercised diligence in researching and inventorying the
assets of the estate.  The final inventory, to their knowledge, was accurate.  Appellant
declined to testify several times.  However, Appellant acted as his own lawyer
and made arguments, suggestions, and observations to the court.  After
Appellant described his efforts to augment and correct Appellee’s inventory of
mineral assets, the court remarked that Appellant is “extremely capable of
researching these, seeking them out, . . . [and] determin[ing] if they are,
indeed, interests that still remain in the Denton name and subject to being
passed on to [him].”

            Appellant
asked that the estate not be closed and that Appellee be compelled to correct
and complete the inventory.  However, Appellant also stated that, because Appellee
lacked knowledge of oil and gas interests, Appellee was probably not capable of
“mak[ing] a credible statement about what oil and gas assets are in [the]
estate.”   Appellee’s counsel explained that the expense of keeping the estate
in administration for over five years, as well as the cost of investigating
assets, was borne by the residual estate and that this had caused the residual
trust to decline in value.  As Appellant is the primary beneficiary of the
trust, Appellee argued that it is in Appellant’s interest to close the administration.
 Appellee’s counsel stated that Appellant was attempting to use the estate as a
“de facto trust” instead of managing his own assets.  Appellant expressed his
belief that the title status of each asset needed to be resolved, that Appellee
was “being paid to do [this],” and that it was “[Appellee’s] job to do this now
and not [Appellant’s] job to do later.”  Appellee’s counsel and the trial court
attempted to explain to Appellant that the estate was attempting to turn over
ownership of the assets to Appellant so that he could “go forth and manage his
own assets.”

            The
trial court did not think that it was its obligation to instruct Appellee to
continue researching items at the estate’s expense.  The trial court told
Appellant that, if certain assets belonging to Appellant by right were not
reflected in the inventory, the assets could still be collected and utilized by
Appellant after the estate was closed.  The trial court went on to say that identifying
flaws in the inventory is not an attack on “the estate’s essential purpose,
which is to advise you of everything that they have been able to ascertain
through reasonable methods as to be included in Esther’s estate.”  However, the
court invited Appellant to testify about the alleged errors in the inventory as
well as anything that could indicate malfeasance on the part of the administrator.
 Appellant declined.

            Appellant
requested that Appellee, Pat Long Weaver (Appellee’s trial counsel), and the
trial judge all be called to testify.  These requests were denied by the court. 
 The court then signed the order  distributing and closing the estate.

Trial Court’s Refusal of
Testimony

            In
his first two issues, Appellant complains that the trial court abused its
discretion by refusing to hear testimony from Appellee and Weaver.  As a
general rule, the decision to admit or exclude testimony of a witness is
subject to an abuse of discretion standard of review.  Owens-Corning
Fiberglas Corp. v. Malone, 972 S.W.2d 35, 43 (Tex. 1998); Bartosh v.
Gulf Health Care Center-Galveston, 178 S.W.3d 434, 442–43 (Tex. App.—Houston
[14th Dist.] 2005, no pet.).  However, an appellate court does not reach the
question of whether evidence was erroneously excluded unless the complaint has
first been preserved for review.  See McInnes v. Yamaha Motor Corp., U.S.A.,
673 S.W.2d 185, 187 (Tex. 1984).  To preserve error on appeal, a party must
present to the trial court a timely request, motion, or objection; state the
specific grounds therefore; and obtain a ruling that appears in the record.  Tex. R. App. P. 33.1(a); Wal-Mart
Stores, Inc. v. McKenzie, 997 S.W.2d 278, 280 (Tex. 1999).  To challenge an
exclusion of evidence by the trial court on appeal, the complaining party must
present the excluded evidence to the trial court by offer of proof or bill of
exception.  Tex. R. Evid. 103(a),
(b); Tex. R. App. P. 33.2;
Langley v. Comm’n for Lawyer Discipline, 191 S.W.3d 913, 915 (Tex. App.—Dallas
2006, no pet.) (concluding appellant failed to preserve error when no offer of
proof or bill of exception was made).

            An
offer of proof consists of making the substance of the evidence known to the
court and shall be made as soon as practicable after the ruling excluding the
evidence.  Rule 103(a), (b).  The offer of proof allows a trial court to
reconsider its ruling in light of the actual evidence.  Smith v. Smith,
143 S.W.3d 206, 211 (Tex. App.—Waco 2004, no pet.).  When there is no offer of
proof made before the trial court, the party must introduce the excluded
testimony into the record by a formal bill of exception.  Rule 33.2; Sw.
Country Enters., Inc. v. Lucky Lady Oil Co., 991 S.W.2d 490, 494–95 (Tex. App.—Fort
Worth 1999, pet. denied).

            Appellant
did not state a basis for his objection to the trial court’s refusal to allow
the testimony of either Weaver or Appellee.  Appellant also did not make an
offer of proof or make a bill of exception as to either of the potential
witnesses.  He did not make the substance of the evidence he hoped to elicit
known to the trial court.  He merely made known the topics of his proposed
questions for Appellee.  Appellant stated that he wished to ask Appellee about his
efforts to search for assets, his personal knowledge of the inventory, and his knowledge
of oil and gas interests in general and also whether he considered an alleged
error in Appellant’s father’s estate (administered in the 1970s) to be
“significant” in the administration of this estate.  When the trial court asked
Appellant several times to testify about those topics himself, he declined.  As
for Weaver, Appellant said only that he would like to take her testimony.  Appellant
has not preserved error for either of his first two issues, and they are
overruled. 

Sufficiency
of the Evidence

            In
his third and fourth issues, Appellant argues that the trial court abused its
discretion when it approved the amended inventory and the application to close
the estate.  Appellant argues that the evidence was legally and factually
insufficient as to both.

Standard
of Review

            We
are unable to locate, and neither party brings to our attention, any Texas
cases that set forth the applicable standard of review of a trial court’s
orders under Section 255 or Section 404 of the Texas Probate Code.  Tex. Prob. Code Ann. §§ 255, 404 (West
2003).  However, Texas courts have applied the abuse of discretion standard to
review a trial court’s actions under various other Probate Code sections.  See
Eastland v. Eastland, 273 S.W.3d 815, 820 (Tex. App.—Houston [14th
Dist.] 2008, no pet.) (suitability of executor and determination regarding
necessity for administration); Estate of Wolfe, 268 S.W.3d 780 (Tex.
App.—Fort Worth 2008, no pet.) (approval of application for family allowance);
In re Estate of Walker, 250 S.W.3d 212, 214 (Tex. App.—Dallas 2008, pet.
denied) (denying a request for corrected inventory); In re Estate of Stanton,
202 S.W.3d 205, 209 (Tex. App.—Tyler 2005, no pet.) (determination of
suitability of executor or administrator); In re Estate of Clark, 198
S.W.3d 273, 275 (Tex. App.—Dallas 2006, pet. denied) (removal of a personal
representative).  In Estate of Walker, the court found that a
determination of a complaint under Section 258 of the Probate Code is committed
to the trial court’s discretion because the trial court was empowered by the
statute to order a new inventory if the court was “satisfied” that the
inventory or appraisement was erroneous.  Walker, 250 S.W.3d at 214.  Similarly,
Section 255 and Section 404 each empower the trial court respectively to “examine and approve, or disapprove” the inventory, and to
close the estate “when there is no further need for administration.”  By
analogy, we hold that abuse of discretion is the appropriate standard of review
in this case as well. 

            To
determine whether a court abused its discretion, we must decide whether the
court acted without reference to any guiding rules or principles; in other
words, we must decide whether the act was arbitrary or unreasonable.  Downer
v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241–42 (Tex. 1985).  Merely
because a court may decide a matter within its discretion in a different manner
than an appellate court would in a similar circumstance does not demonstrate
that an abuse of discretion has occurred.  Id.  An abuse of discretion
does not occur as long as some evidence of substantive and probative character
exists to support the trial court’s decision.  Butnaru v. Ford Motor Co.,
84 S.W.3d 198, 211 (Tex. 2002).

            The
trial court’s power to approve an inventory and accounting is governed by Section 255
of the Texas Probate Code.  The Code requires the personal representative of an
estate to file with the probate court a verified, full, and detailed inventory
of “all the property of such estate which has come to the representative’s
possession or knowledge.”  Tex. Prob. Code
Ann. § 250 (West Supp. 2011).  Once the inventory is filed, the probate
court must examine it and either approve or disapprove it.  Id. § 255.  When
approved by the court, an inventory constitutes the inventory of the estate for
all purposes referred to in the Texas Probate Code.  Id.  § 250. Section 233 of the Code asks
that the personal representative of the estate exercise “ordinary diligence” in
collecting the property of the estate.  Id. § 233.

            The
trial court did not abuse its discretion in approving the amended inventory.  After
the initial inventory was filed, Appellant provided input as to twenty omitted
oil and gas assets.  Appellee took this input, conducted additional research,
and filed an amended inventory.  At the October 20, 2010 hearing, Appellee submitted
an affidavit in which he stated that the list of assets was complete to his
knowledge.  Appellee’s attorney told the trial court about the efforts that had
gone into the search and averred that this was the complete list of assets to
the best of Appellee’s knowledge and research.  Because this was a dependent
administration, the trial court had observed the effort and expense that went
into researching and preparing the inventory over the years.  Every expense had
to be approved by the court, and there is, thus, an extensive record of the
administrator’s diligence in completing the inventory.  Several times at the
hearing, Appellant was given the opportunity to testify or otherwise present evidence
to support his objections to the inventory.  He declined to do so.  Therefore,
we cannot say that the trial court abused its discretion in approving the
inventory.  The evidence was sufficient that the administrator catalogued every
asset that came to his possession or knowledge.  Appellant’s third issue is
overruled.

            The
trial court did not abuse its discretion by approving Appellee’s application
for closure of the estate.  Closure of an estate is appropriate when “all the
debts known to exist against the estate of a deceased person have been paid, or
when they have been paid so far as the assets in the hands of an administrator
or executor of such estate will permit, and when there is no further need for
administration.”  Section 404.  Appellant
makes no allegation that the estate’s debts remain unpaid.  The application for
closure of the estate asserts that all the debts of the estate have been paid,
the federal estate tax return has been filed, and the Internal Revenue Service
has accepted the return without audit and issued its closing letter.

            Though
Appellant made unsworn claims alleging inadequacies in the inventory, he gave
the trial court no explanation why this necessitated a need for continued administration.
 Moreover, he presented no evidence that the estate needed to remain in
administration.  Appellant was the only remaining beneficiary of the estate who
had not accepted distribution of his share of the assets.  Appellant refused to
testify about his objections to closing the estate.  Appellee argued at the
hearing that closing the estate would do no harm and would not prevent
Appellant from tracking down additional oil and gas interests on his own.  Appellant
presented no reason why he could not do this; to the contrary, he convinced the
trial court that he was extremely capable in the oil and gas arena.  Keeping
the estate open would be a costly endeavor, approximately $7,000 a month
according to the application for closing.  The application also states that the
residuary estate was “being depleted because of the stalemate with [Appellant] in
distributing and closing the estate.”  As Appellee explained to the court, the
efforts expended over five years of administration had been borne solely by the
residuary trust and had transformed the trust into a declining fund.  The court
had ample evidence that Appellee diligently pursued the property of the estate. 
The evidence was sufficient to show that the debts of the estate had been paid
and that there was no further need for administration.  The trial court did not
abuse its discretion.  Appellant’s fourth issue is overruled. 

            The
order of the trial court is affirmed.

 

 

                                                                                                ERIC
KALENAK

                                                                                                JUSTICE

 

July 26, 2012

Panel consists of: Wright, C.J.,

McCall, J., and
Kalenak, J.









            [1]Appellant’s brief contains a fifth issue concerning the
trial court’s approval of the accounting.  However, this issue is not mentioned
in the brief other than in the table of contents and statement of facts.  No
argument was presented on this issue, and no case law was cited. Appellant has
waived this portion of his complaint for failure to brief the issue as required
by Tex. R. App. P. 38.1(i).  See
Fed. Sign v. Tex. S. Univ., 951 S.W.2d 401, 410 (Tex. 1997) (ordinarily,
failure to brief an argument waives error on appeal).