

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-18-00093-CV

———————————————

ESTATE OF JOHN DAVID HARRIS, DECEASED

On Appeal from Probate Court No. 2
Tarrant County, Texas
Trial Court No. 2011-PR00903-1-2

Before Meier, Gabriel, and Pittman, JJ.
Memorandum Opinion by Justice Pittman

## MEMORANDUM OPINION

John David Harris (the decedent) died in 2011. In the administration of his estate, the probate court appointed Monika Cooper as attorney ad litem for his unknown heirs, appointed her dependent temporary administrator of the estate, and ultimately awarded her attorney's fees for her services. The decedent's son, Appellant David Glen Harris (Harris), appeals from that award. Because we hold that the probate court had jurisdiction to appoint Cooper and that none of Harris's challenges to the sufficiency of the evidence have merit, we affirm.

## BACKGROUND

Harris filed a "Second Amended Original Proceeding to Declare Heirship," naming himself and his brother Lee Lynn Harris as the decedent's only heirs and his stepsister Ludene Harper as a person claiming an interest in the estate.[1] *See* Tex. Est. Code Ann. § 202.001 (West 2014) (authorizing a proceeding to declare heirship), § 202.005 (West Supp. 2018) (application for proceeding to declare heirship). He also applied for the appointment of a temporary administrator for the decedent's estate. Harris was incarcerated when he filed the "Original Proceeding" and remains incarcerated at the time of this appeal. Harris's brother is also incarcerated.

---

[1]Harris previously sued Harper in a dispute over the decedent's house. *See Harris v. Harper*, No. 02-13-00258-CV, 2014 WL 1510145 (Tex. App.—Fort Worth Apr. 17, 2014, pet. denied) (mem. op.).

Pursuant to Estates Code Sections 53.104 and 202.009, the probate court appointed Monika Cooper as attorney ad litem to represent the decedent's unknown heirs, if any (the Unknown Heirs). *See id.* §§ 53.104, 202.009 (West 2014). Harris objected to the appointment on the basis that there were no unknown heirs and that he was not given the opportunity to agree or disagree with Cooper's appointment. The trial court overruled the objection.

Cooper filed an ad litem report in which she stated her opinion that "the listing of the heirs of the Decedent, as shown in the Application, is NOT [a] true, correct, and complete summary of heirs." She attached an exhibit listing the decedent's family history and identifying potential heirs. Cooper stated that she had: (1) reviewed Harris's application; (2) filed an answer on behalf of the Unknown Heirs; and (3) contacted specified people to obtain and verify the decedent's personal history and family background. She also noted that she had not yet located Harris's brother. One of the people Cooper contacted was Harper, the daughter of the decedent's second wife.[2] In the attached exhibit, Cooper named a potential heir who had been born out of wedlock.[3]

Cooper filed a sworn application for payment of her fees and expenses (application for attorney ad litem fees) and attached invoices showing the work

---

[2]Harper's mother predeceased Harris's father.

[3]At the hearing on Cooper's application for her fees, she stated that this potential heir had been given notice but had not appeared.

3

performed by her and her paralegal and the costs for the work. *See id.* § 53.104(b) (providing that an attorney ad litem appointed under that section is entitled to reasonable compensation for services provided in the amount set by the court). She subsequently filed an application to be appointed temporary administrator of the estate. The probate court appointed her dependent temporary administrator over Harris's objection.

Cooper filed an accounting for the estate listing (1) her requested ad litem fees of $5,128.64 and temporary administrator legal fees of $1,584.19 as unpaid debts of the estate and (2) $8,491.51 she had deposited in the probate court's registry as the estate's assets, leaving a net value of $1,778.68 for the estate. She also filed an application for payment of attorney's fees for her services as dependent temporary administrator. In the application, she noted that she had not retained separate counsel and was seeking her attorney's fees related to her representation of herself as dependent temporary administrator but was not seeking additional fees for her services as administrator. After a hearing, the probate court authorized paying Cooper $5,128.64 in attorney ad litem fees from the funds held in the court's registry. The probate court also approved the accounting filed by Cooper and authorized the payment of $1,584.19 in attorney's fees for her services as dependent temporary administrator. Harris now appeals.

## DISCUSSION

### I. The Probate Court Had Jurisdiction Over the Unknown Heirs and to Appoint an Attorney Ad Litem.

In his first issue, Harris asserts that the probate court's order appointing Cooper attorney ad litem is void. He contends that because he did not name any unknown heirs as applicants or defendants and did not request service on any unknown heirs, the probate court had no jurisdiction to appoint an attorney ad litem to represent the Unknown Heirs.

In any probate proceeding, a probate court has the authority to appoint an attorney ad litem to represent an unknown heir. *Id.* § 53.104(a). Further, in any proceeding to declare heirship, the Estates Code requires "each unknown heir of the decedent who is the subject of the proceeding" to be made a party. *Id.* § 202.008 (West 2014). In such a proceeding, the court "*shall* appoint an attorney ad litem . . . to represent the interests of heirs whose names or locations are unknown." *Id.* § 202.009 (emphasis added). That Harris did not name any unknown heir in his application did not deprive the trial court of jurisdiction to appoint an attorney ad litem to represent the Unknown Heirs. None of the cases he cites in his brief address the statutory provisions relating to the appointment of an attorney ad litem in a proceeding to declare heirship. We overrule his first issue.

5

## II. The Record Does Not Show that Cooper Acted Outside the Scope of Her Duties.

In his second issue, Harris asserts that the probate court's award of attorney's fees to Cooper compensated her for work outside the scope of her duties. He specifically complains of Cooper's communications with Ludene Harper. Harris asserts that Cooper's "ex parte communications with [Harper][4] concerning [Harris's] pleadings filed against [Harper] and the review of all pleadings filed against [Harper] was not part of [Cooper's] duties." He argues that Cooper's "review of documents and pleadings should have been limited by what was reasonable and necessary to the interest of the alleged [U]nknown [H]eirs."

The amount of attorney's fees awarded to an attorney ad litem lies within the trial court's discretion. *Garza v. Slaughter*, 331 S.W.3d 43, 45 (Tex. App.—Houston [14th Dist.] 2010, no pet.). A trial court abuses its discretion if the court acts without reference to any guiding rules or principles, that is, if the act is arbitrary or unreasonable. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004).

As the attorney ad litem of the Unknown Heirs, Cooper represented the Unknown Heirs' interests. *See* Tex. Est. Code Ann. § 202.009(a). Harris has cited no

---

[4]Harris appears to base his complaint on two statements in Cooper's invoices for her services rendered as attorney ad litem: "[c]onference with Ms. Harper regarding [the decedent's] latest letters" and "conference with Ms. Harper regarding hearing on Friday." In a separate invoice, Cooper further noted that she communicated with Harper about life insurance proceeds.

authority holding that an attorney ad litem, in attempting to locate unknown heirs, acts outside the scope of her duty by contacting family members to ask about the decedent's personal and family history. *See* Tex. R. App. P. 38.1(i). Nor has he cited any authority that reviewing the filings of an applicant in a proceeding to determine heirship is outside the scope of an attorney ad litem's duties in representing unknown heirs. *See In re Estate of Stanton*, 202 S.W.3d 205, 208 (Tex. App.—Tyler 2005, pet. denied) ("It is the attorney ad litem's duty to 'defend the rights of his involuntary client with the same vigor and astuteness he would employ in the defense of clients who had expressly employed him for such purpose.'") (citations omitted).

Further, although Harris alleges that Cooper improperly assisted Harper in "defeating [Harris's] cause of action," the record does not support this argument. Cooper stated in her invoice that she had a conference with Harper "regarding hearing on Friday," but that statement in no way indicates that Cooper assisted Harper in defeating any claims Harris had against her. From our review of the record, none of the acts taken by Cooper were outside the scope of her duties as attorney ad litem. *See id.* ("The attorney ad litem owes the same duty to his client as the attorneys representing executors owe to their clients. The attorney ad litem must exhaust all remedies available to his client."). We overrule Harris's second issue.

### III. Harris Has Not Shown that Cooper Had a Disqualifying Conflict of Interest.

In his third issue, Harris argues that the probate court abused its discretion in finding Cooper suitable to be temporary administrator over his father's estate. A probate court has broad discretion in determining whether a person is suitable to serve as administrator. *See id.*, at 209.

Harris's argument under this issue focuses on Cooper's statement in her attorney ad litem report that the decedent had been married to Harper's mother. He contends that Cooper made this statement without evidence to support her assertion[5] and that by doing so, she alleged that Harper has an interest in the decedent's estate and thereby acted on behalf of and to the benefit of Harper. He argues that "[t]he authority of a temporary administrator is to act as a conservator, not a distributor of the estate" and that "the ad litem could not intervene in [Harris's] conversion of property cause of action against [Harper] without express authorization from the probate court." He contends that her interests as attorney ad litem in "assisting [Harper] in the stealing of an interest in the [decedent's] estate are so adverse to those of the estate that both cannot be fairly represented by the same person." Thus, he argues, the award of fees to Cooper as temporary administrator should be reversed.

---

[5]We note that Harris attached to one of his filings in the trial court, a copy of the death certificate for Harper's mother, which indicated that at the time of her death she was married to "J.D. Harris."

8

While Harris argues that Cooper filed pleadings on Harper's behalf, represented Harper in the trial court, and assisted Harper in defeating motions he filed, he points to no evidence in the record to support these allegations, and we have found none. Further, the record does not show that Cooper took any action adverse to the decedent's estate. As Harris notes, Cooper stated in her report as attorney ad litem that the decedent married Harper's mother. But Harris has not explained how her doing so showed an interest that was adverse *to the estate*. The cases Harris cites do not support his argument. *See Pine v. deBlieux*, 360 S.W.3d 45, 49 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) (noting that "persons claiming disputed assets as their own to the exclusion of an estate are denying the estate's title" and that "when an administrator or executor claims title to property owned by the testator at the time of death, the interest of the estate and that administrator or executor are too adverse for that one person to advocate effectively for both sides"); *Ayala v. Martinez*, 883 S.W.2d 270, 272 (Tex. App.—Corpus Christi 1994, writ denied) (upholding trial court's finding that the proposed administrator's community property claim to estate assets created a conflict of interest that rendered her unfit to serve as administrator); *Barrett v. Parchman*, 675 S.W.2d 289, 292 (Tex. App.—Dallas 1984, no writ) (stating that temporary administrator's unsuccessful attempt to impose a constructive trust on estate's assets was done in her own interest as a distributee). In stating that Harper's mother was married to the decedent, Cooper did not claim ownership of any asset of the decedent's estate. Harris has not argued any other basis of a conflict of interest

9

that would render Cooper unsuitable to serve as administrator. We overrule his third issue.

## IV.     Harris's Challenges to the Sufficiency of the Evidence are Unavailing.

In his fourth issue, Harris contends that the probate court abused its discretion in approving the award of attorney ad litem fees because insufficient evidence supports the award.

Harris notes that at the hearing on Cooper's application for attorney ad litem fees and in the sworn application itself, Cooper provided the following information: when she was appointed; when she filed an answer on behalf of the Unknown Heirs; how long she has been licensed to practice law in Texas; when she filed her report; her hourly rate; and "the areas of litigation." Harris contends that "[t]his information is not competent evidence and should not have been considered." Harris fails to explain why this evidence was not competent evidence. *See* Tex. R. App. P. 38.1(i); *see also Ditto v. Piper*, 244 S.W.2d 547, 551 (Tex. Civ. App.—Fort Worth 1951, writ ref'd n.r.e.) ("Testimony which tends to explain or increase the probability of a relevant fact is competent." (citations and internal quotation marks omitted)). The case he cites to support his argument is not applicable. *See DaimlerChrysler Corp. v. Brannon*, 67 S.W.3d 294, 300 (Tex. App.—Texarkana 2001, no pet.) (holding that the trial court could not consider the attorney ad litem's report, which provided information about work done by the attorney, in determining the ad litem's fee because the report had not been

10

admitted at trial and was therefore "not competent evidence properly before the court").

Harris further challenges the award compensating Cooper's firm for work performed by Cooper's paralegal, which Cooper requested in her application for attorney ad litem fees. Harris argues that because no unknown heirs were located,[6] Cooper failed to show how the paralegal's services were reasonable and necessary. As stated above, the probate court was required to appoint an attorney ad litem after Harris filed for a determination of heirship. *See* Tex. Est. Code Ann. § 202.009. Harris also argues that while Cooper alleged that the paralegal's fees were reasonable and necessary, the application was not signed by the paralegal. There is no requirement that legal assistants personally submit their own applications for an award of fees; a court may assess compensation for a legal assistant's work and include it in the award for attorney's fees. *See Multi-Moto Corp. v. ITT Commercial Fin. Corp.*, 806 S.W.2d 560, 570 (Tex. App.—Dallas 1990, writ denied) (holding that compensation for a legal assistant's work may be included in an award of attorney's fees). Harris cites to no authority that the paralegal was required to separately submit or sign an application for the fees Cooper's firm sought for his services. *See* Tex. R. App. P. 38.1(i).

---

[6]Harris does not address Cooper's report and statements to the probate court that she had located a potential unknown heir who did not make an appearance.

11

Also under this issue, Harris argues that the application for ad litem fees was not signed by anyone at Cooper's law firm—either the firm she worked for when she began her representation or the law firm that she worked for by the end of the case— and that there was no expert testimony to support the award of attorney's fees. Harris is mistaken; Cooper could provide the expert testimony necessary to support an award of attorney's fees, *see Garcia v. Gomez*, 319 S.W.3d 638, 641 (Tex. 2010), and Cooper—who is an attorney at the firm she works for—signed and swore to the application for attorney ad litem fees.

Finally under this issue, Harris argues that Cooper failed to provide evidence (1) detailing the work she and her paralegal completed in her representation of the Unknown Heirs; (2) stating that the representation involved complex matters; (3) stating that she or her law firm lost other employment because of the representation; or (4) stating what benefits the Unknown Heirs received. As such, he argues, the evidence was factually insufficient to support the award.

"The determination of the reasonableness of ad litem fees is generally controlled by the same factors used to determine the reasonableness of attorney's fees." *Alford v. Whaley*, 794 S.W.2d 920, 925 (Tex. App.—Houston [1st Dist.] 1990, no writ). Texas courts consider eight factors when determining the reasonableness of attorney's fees,[7] including some of the factors that Harris references. *See Sundance*

---

[7]The factors are:

12

*Minerals*, 354 S.W.3d at 513–14. However, a trial court is not required to receive evidence on each of those factors before making an award. *Id.* at 514; *Brockie v. Webb*, 244 S.W.3d 905, 909 (Tex. App.—Dallas 2008, pet. denied).

In Cooper's sworn application for attorney ad litem fees, she stated that she has been practicing for twenty years, primarily litigating issues relating to estate planning, probate, and trusts; that her hourly rate is $250, a reasonable hourly rate in Tarrant County for an attorney with her experience; that her paralegal has practiced for twelve

---

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;

(2) the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Sundance Minerals, L.P. v. Moore*, 354 S.W.3d 507, 513–14 (Tex. App.—Fort Worth 2011, pet. denied).

years with an emphasis in estate planning, probate, and trusts, and has an hourly rate of $120; that the paralegal's rate is reasonable for Tarrant County for a paralegal with the same experience; that the services she and her paralegal provided were reasonable and necessary for representation of the Unknown Heirs; and that the services they provided were more fully described in the attached invoices. In the invoices, she described the work performed by her and the paralegal, the amount of time spent on the work, and the charges for that work. We conclude that the evidence was factually sufficient to support the probate court's award. *See Brockie*, 244 S.W.3d at 910.

## V.    Cooper's Applications Demonstrated Personal Knowledge.

In his fifth issue, Harris argues that the probate court abused its discretion in awarding attorney's fees to Cooper for her services as attorney ad litem and as temporary administrator because Cooper's applications for the fees were not based on personal knowledge.[8] Cooper does not challenge Harris's argument that the applications had to show personal knowledge of the facts stated therein. She asserts, however, that her personal knowledge of the facts within the applications and her billing records "are plainly represented in the documents." We agree.

An attorney's testimony about the reasonableness of her own fees, "[a]lthough rooted in the attorney's experience and expertise, . . . also consists of the attorney's personal knowledge about the underlying work and its particular value to the client."

---

[8]In his brief, Harris challenges Cooper's "affidavits." We assume he refers to Cooper's applications, which, like an affidavit, included jurats.

*Garcia*, 319 S.W.3d at 641. Cooper's invoices listed the work she and her paralegal performed and the length of time they spent on the work. In her sworn applications, she referenced the invoices and stated that they described the services she and her paralegal performed and the charges for those services. The statements in her sworn applications and her invoices show that she sought compensation for work she herself performed and the work that she directed her paralegal to perform. And as Cooper asserted in the hearing on her applications, she has the knowledge necessary to testify regarding her own qualifications. Because Cooper's applications show personal knowledge of facts that support the probate court's award, we overrule Harris's fifth issue.

## CONCLUSION

Having overruled Harris's five issues, we affirm the probate court's award of attorney's fees to Cooper.

/s/ Mark T. Pittman
Mark T. Pittman
Justice

Delivered: November 29, 2018

15